## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER BENNICK, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-cv-00209 |
| v. | (SAPORITO, M.J.) |
| ANDREW SAUL,<br>Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Jennifer Bennick's ("Bennick") claim for disability insurance benefits under Title II of the Social Security Act.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10). For the reasons stated herein, we will AFFIRM the decision of the Commissioner.

### I.    *Procedural Background*

Bennick is an adult individual born July 28, 1974.  Bennick was forty years old at the time of the alleged onset of disability—April 16,

2015. (Tr. 10).

On January 9, 2017, Bennick protectively filed an application for benefits under Title II of the Social Security Act alleging disability as of April 16, 2015.  In her application, Bennick alleged that the following impairments prevent her from engaging in any work: rheumatoid arthritis and Chiari malformation. (Tr. 117).

Bennick's claim was initially denied on March 7, 2017.  Thereafter, she filed a timely request for an administrative hearing.  Her request was granted. Bennick appeared and testified in Wilkes-Barre, Pennsylvania, on September 11, 2018, at a hearing before Administrative Law Judge ("ALJ") Timothy Wing.   Bennick was represented by Noah G. Naparsteck, Esquire. In addition, impartial vocational expert ("VE") Michele Giorgio appeared at the hearing. (Tr. 52).

On January 3, 2019, the ALJ denied Bennick's application for benefits in a written decision.  On March 11, 2019, Bennick sought further review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied on December 23, 2019.  This makes the ALJ's January 2019 decision the final decision subject to judicial review by this Court.

Bennick timely filed a complaint in this Court on February 6, 2020. (Doc. 1).  In her complaint, Bennick alleges that the ALJ's conclusions and findings of fact are not supported by substantial evidence and are contrary to law and regulation.  In her claim, she requests relief as the court deems just.  (Doc. 1, at 3).

On April 9, 2020, the Commissioner filed an answer, which maintains that the ALJ's decision was made in accordance with the law and regulations. (Doc. 5, at 3).

This matter has been fully briefed by the parties and is ripe for decision.  (Docs. 9, 11).

## I.   FACTUAL BACKGROUND

At the time of the administrative hearing, Bennick was forty-four years old and resided with her mother and twenty-one-year-old daughter in Danville, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 58).

Bennick has a high school education and an associates degree.  (Tr. 58).   Bennick stated that she is able to vacuum, do laundry, walk the dog, and cut the grass on a riding lawn mower.  (Tr. 61).  She stated that she does drive locally, but when she travels with her mother to Maine

once a year for vacation, her mother drives.  She stated that she is able to walk while on vacation, but no rock climbing.    She also stated that she takes trips to Gettysburg and walks around.  (Tr. 62-63). Bennick is able to go out shopping with her mother, but her mother drives.  (Tr. 64). She is only comfortable driving locally; she stated that she gets confused and disoriented and has trouble staying in her own lane when driving any longer than 30 minutes.  (Tr. 64-65). She stated that she does not go out alone often or drive very long distances because she gets disoriented. (Tr. 195). Bennick stated that she enjoys her garden.  (Tr. 64).    She volunteers at a dog shelter, 1-2 days a week.  (Tr. 196).   Bennick drives alone to go to the kennel to volunteer.  At the kennel she lets the dogs out for recreation time, brushes and feeds them, and uses an electric power washer to clean the kennels.  She stated that she spends about 10 hours a week at the kennel.  (Tr. 65).  She stated that she wears a brace on her right hand when power washing the kennels and she wears a sling on it at night when she sleeps.  (Tr. 66).  Bennick stated that she stopped working on September 20, 2012, because of her condition.  (Tr. 175).  In a January 2017 function report, Bennick stated that her Chiari malformation causes confusion, comprehension problems, disorientation,

neck pain, cognitive function impairment, speech difficulties at times, and severe head pressure, which sometimes prevents her from sleeping. She has had numerous joint reconstructions due to rheumatoid arthritis. She has pain, swelling, deformations, aches, pain that wakes her up during the night, and loss of strength. (Tr. 192-93).  She stated that she went to culinary school after high school, but cannot make anything from memory--she has to read a recipe.  (Tr. 194).   Her mom helps her with her bank account because she cannot do math.  (Tr. 195-96).  She stated that she had at one time exercised frequently, but she no longer exercises because of the pain and the side effects of the medication.  (Tr. 196).  Since her brain surgery, she stated that loud noises cause head pain and pressure that lead to disorientation. (Tr. 197).  She stated that she can follow written instructions better than spoken instructions, because she is able to review them.  (Tr. 197).

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir.

2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not

disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental

impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner

*(continued on next page)*

(5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

## III.   DISCUSSION

In his January 3, 2019, decision denying Bennick's claim, the ALJ evaluated Bennick's application for benefits at each step of the sequential process.  At step one, the ALJ found that Bennick had not engaged in substantial gainful activity during the period of April 16, 2015, through her date of last insured of December 31, 2017.  (Tr. 12). At step two, the

---

considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

ALJ found the following impairments were medically determinable and severe during the relevant period: rheumatoid arthritis, bilateral elbow disorder including epicondylitis, and bilateral wrist disorder including radial-ulnar joint disorder status post-surgery. (Tr. 12). At step three, the ALJ found that Bennick did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 13). Between steps three and four, the ALJ assessed Bennick's RFC.   After evaluating the relevant evidence of record, the requirements of 20 C.F.R. § 404.1529, and the guidance of Social Security Ruling 16-3p, the ALJ found that Bennick had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with the following limitations:

> she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, and climbing ramps or stairs. She must avoid occupations that require climbing on ladders, ropes, and scaffolds or crawling, and she is limited to occupations that require no more than occasional pushing and pulling with the upper extremities. She must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilations, temperature extremes, excessive

noise, excessive vibration, extreme dampness, and humidity, and she is limited to occupations that do not require frequent exposure to dangerous machinery and unprotected heights. She is limited to occupations requiring no more than simple, routine, and repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes.

(Tr. 14).

The ALJ's conclusions at steps four and five of the sequential evaluation process were based on his RFC assessment and the VE's testimony. At step four, the ALJ found that Bennick was unable to perform her past relevant work as defined in 20 C.F.R. § 404.1565. Bennick had past relevant work as a data entry clerk, legal secretary, and staff sergeant for the U.S. Air Force. The requirements of Bennick's past relevant work exceeded the limitations of her current RFC. The ALJ found that Bennick is unable to perform her past relevant work as actually or generally performed. (Tr. 18).

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the

past because of her impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. *Rossi*, 602 F.2d at 57.

The ALJ found that Bennick was forty years old at the time of her alleged disability onset. Bennick's age places her in a category of a "younger person" under the Social Security Act whose age generally does not affect her ability to adjust to other work. *See* 20 C.F.R. § 404.1563(c). According to the testimony given by a vocational expert, a significant number of jobs exist in the national economy for an individual of Bennick's age, education, work experience, and her RFC as determined by the ALJ. (Tr. 20, 83). These jobs include: usher, DOT No. 344.677-014, with 85,000 positions available nationally; service attendant, DOT No. 352.667-014, with 23,000 positions available nationally, and counter clerk, DOT No. 299.357-018, with 101,000 positions available nationally. Having found a significant number of jobs to which Bennick was capable of making a successful adjustment, the ALJ concluded that Bennick was therefore not disabled as of her alleged onset date of April 16, 2015, through her date of last insured--December 31, 2017.  (Tr. 20).

Bennick contends the ALJ erred as follows:  (1) failure to find her Chiari malformation, status post suboccipital craniotomy for decompression of Chiari malformation, and migraine headaches were severe impairments; (2) improper lay interpretation of the medical evidence in formulating her RFC; (3) failure to adequately address her physical impairments in the RFC; and (4) failure to consider her testimony concerning the effect her medications have on her.

### a. The ALJ did not err when finding Bennick's Chairi Malformation non-severe.

Bennick contends that the ALJ erred  in failing to find Bennick's Chiari malformation, status post suboccipital craniotomy for decompression of Chiari malformation, and migraine headaches were severe impairments.

At step two of the five-step sequential evaluation process, the ALJ must determine whether a claimant has a medically determinable impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a). An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The ALJ must "consider an individual's symptoms and functional limitations to determine whether

- 13 -

his or her impairment(s) is severe unless the objective medical evidence alone established a severe medically determinable impairment or combination of impairments."  Soc. Sec. Ruling 16-3 p, 2017 WL 518304, at *11 (eff. Mar.28, 2016).  The ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability o perform work-related activities."  Rescission of Social Security Rulings 96-3 and 96-4, 83 Fed. Reg. 27,816 (June 14, 2018).

It is well-established that the ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Further, where the ALJ's decision in a social security disability benefits case is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *Richards*, 223 F. Supp. 3d at 304.

Typically, any error in failing to find a severe impairment at step two would be a "harmless error"  if the ALJ continued with the analysis, proceeding on to step three, as he did here. *See Salles v. Comm'r  of Soc.*

- 14 -

*Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007).  Regardless, we find that the ALJ did not err in failing to find Bennick's Chiari malformation a severe impairment.   The records confirm that Bennick had Chiari posterior fossa decompressive surgery in October 2012, and she  reported only residual headaches as a symptom after surgery.  (Tr. 564, 655).

In finding Bennick's Chiari malformation non-severe, the ALJ carefully considered the medical record in its entirety including medical records from Geisinger Medical Center that noted she has a history of Arnold-Chiari malformation, but no focal neurologic deficits.  (Tr. 568). Records show that her gait was normal, and her strength was five out of five.  (Tr. 569).  In March 2017, it was noted that Bennick had a history of headaches. (Tr. 536).

Bennick points out that Dr. Timmons opined that she was unable to be gainfully employed, but when reviewing the records, the notes were actually made by Dr. Timmons's physician assistant, Kevin A. Hickman. (Tr. 394).  Because Bennick's application for benefits was filed before March 27, 2017, Hickman is not considered an acceptable medical source, and thus his findings are not considered to be medical opinions under the applicable regulations.  *See* 20 C.F.R. § 404.1502(a)(8) (providing that

licensed physician assistants are "acceptable medical sources" only for claims filed <u>after</u> March 27, 2017); *id*. § 404.1527(a)(1) (defining "medical opinions"). Moreover, even if this comment had been noted by Dr. Timmons or another acceptable medical source, it is an opinion on disability, an issue expressly reserved to the Commissioner. *See id*. § 404.1527(d)(1); *Dixon v. Comm'r of Soc. Sec.*, 183 Fed. App'x 248, 251 (3d Cir. 2006) ("[o]pinions on disability are not medical opinions and are not given any special significance.").

Additionally, Bennick points out that on August 14, 2017, she was having motion sickness while watching videos and while in vehicles. (Tr. 655). The record shows that Bennick was given meclizine for the motion sickness, and no further issues or treatment for the motion sickness are noted. (Tr. 656). Bennick denied any weakness, paresthesias, balance/coordination difficulties, or changes in vision/hearing. (Tr. 656). A diagnostic brain MRI was ordered which revealed unremarkable findings. (Tr. 664-665).

At her administrative hearing in September 2018, Bennick testified that she experienced incapacitating migraines occurring every 2 weeks, but she also admitted that she was not taking a preventative medication

or seeing a specialist at the time of the hearing. (Tr. 61). Bennick testified that her migraines come about with increased activity and stimuli. (Tr. 69). She also complained that her migraines come about when she needs to process plenty of information. (Tr. 60-61). She stated that the migraines last for 2-3 days before she can return to normal. (Tr. 69). She stated that, during a migraine, she is unable to do anything. She uses black out curtains, an icepack on her head, and she sleeps. (Tr. 69).

Bennick was seen by Christian Silvio Greco, D.O., for her headaches on May 20, 2015. Bennick explained that headaches come on slowly at times, and quickly at others. She described the headaches as a stuffy feeling that lasts 2 to 10 days. At the time, sertralin decreased the duration of her headaches from 5-10 days to 2 days. (Tr. 351). By a visit on August 24, 2016, her headaches seemed to have resolved, and she stated that, for the first time in years, she felt relief. (Tr. 254). In September 2016, she told her primary care physician, Dr. Greco, that her headaches were significantly reduced. She told Dr. Greco that she was no longer having headaches on a daily basis, and she had experienced only three headaches within a 15 day period prior to her visit. (Tr. 246).

When seen by Dr. Tolentino and Dr. Mahmood on January 2, 2018--after her date last insured--Dr. Tolentino noted that sertraline could have contributed to her feeling of head fullness and perhaps brain fog. An MRI from August 2017 was unrevealing. (Tr. 827). On January 16, 2018, Laurie Elizabeth Stoker, PA-C, noted that Bennick described photophobia which is lessened by a dark room and ice bags on her head, but the intensity was severe at times. (Tr. 883). PA Stoker recommended and referred her for evaluation by neurology and head specialist Dr. Nancy Kelley. (Tr. 884).

The ALJ noted that Bennick's own testimony showed that she was capable of engaging in a wide variety of daily activities which were inconsistent with her allegations of disabling symptoms and limitations. (Tr. 16). The ALJ pointed out that Bennick was able to attend to her personal hygiene with some difficulty and prepared her own meals. She was able to do laundry, clean, garden, and weed. She could walk, drive, shop, use a computer, go out to eat, and visit with others. (Tr. 13).

Thus, we find that the ALJ's severity finding was supported by substantial evidence.

**B.    The ALJ properly determined Bennick's residual function capacity.**

Bennick argues that the ALJ improperly used lay interpretation of the medical evidence in formulating Bennick's RFC. Bennick argues that the only medical opinion of record regarding Bennick's mental ability to perform work-related activities is from treating neurosurgeon, Dr. Timmons.  Dr. Timmons noted that Bennick was unable to multi-task, and she needed redirection multiple times during the appointment. Bennick argues that Dr. Timmons opined that she was unable to be gainfully employed, but as noted earlier, that entry in the medical records was made by a physician assistant, and thus it was a lay opinion on an issue expressly reserved to the Commissioner. (Tr. 394).

The ALJ did not rely on a consulting examining physician's opinion. Instead, he gave significant weight to the non-examining state agency physician, Carl Bencoff, M.D., who opined that Bennick could lift or carry twenty pounds occasionally and ten pounds frequently, and she could stand or walk for about six hours in an eight-hour workday. Dr. Bencoff opined that Bennick could occasionally climb ramps and stairs, and she could never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl, while avoiding concentrated

exposure to hazards. (Tr. 120-21).  Here,  the ALJ gave this opinion significant weight as he felt it is supported by a majority of the objective medical evidence.

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c).  The opinion of a treating source is afforded controlling weight when it is well-supported by objective medical evidence that is consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527; *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). ALJs have the sole authority to assign weight to medical opinions entered into the record. *See Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (discussing how "the ALJ is free to accept some medical evidence and reject other evidence, provided that [the ALJ] provides an explanation for discrediting the rejected evidence"). It is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The purpose of this is to allow for meaningful judicial review. *Burnett v. Comm'r Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following

factors, where applicable, in deciding the weight given to any non-controlling medical opinion: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. §§ 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.

2000).

To be a "medical opinion" entitled to "controlling weight" an opinion must come from a "treating source," it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it must be "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(a)(2), (c)(2); Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2. Under the Social Security regulations, a "treating source" is defined as  "an acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). As to what constitutes an "ongoing treatment relationship," the regulation states:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 404.1527(a)(2).

If not well-supported by medically acceptable clinical and diagnostic techniques or inconsistent with other substantial evidence in the case record, a treating source's medical opinion is nevertheless entitled to some deference. Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *4. Ordinarily, it will be afforded "great weight." *See id.*; *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000). *See generally* 20 C.F.R. § 404.1527(c) (detailing factors considered in evaluating weight given to a medical opinion).

Under the Social Security regulations in effect at the time of the ALJ's decision in this case, however, "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Similarly, the regulations define a "treating source" as an "acceptable medical source" who has provided the claimant with "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant. *Id.* § 404.1527(a)(2). For

claims filed before March 27, 2017, the regulations in turn define an "acceptable medical source" as a "[l]icensed physician (medical or osteopathic doctor)," a licensed or certified psychologist, a licensed optometrist for visual impairments, a qualified speech-language pathologist for language impairments, or a "[l]icensed podiatrist for impairments of the . . . foot and ankle only." *Id.* § 404.1502(a).

It is the ALJ's responsibility to evaluate opinion evidence as the finder of fact, not a reviewing court. *See id.* § 404.1527; *Chandler v. Comm'r of Soc. Sec.* 667 F.3d 356, 361 (3d Cir. 2009). The Third Circuit Court of Appeals has long been concerned with ALJ opinions that fail properly to consider, discuss, and weigh relevant medical evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 406-07 (3d Cir. 1979).

Bennick contends that she has physical pain in her elbows, wrists, back, and knees. She takes Humira shots, ibuprofen, and Flexeril for her rheumatoid arthritis. (Tr. 72). She stated that the Flexeril "knocks her out." Bennick's records show that her rheumatoid arthritis was stable with treatment. In February 2014, Dr. Olenginski noted that she experienced wrist pain, but Humira provided her relief. (Tr. 835). In October 2014, he noted that her rheumatoid arthritis was stable and

without flare-ups. (Tr. 385).  In November 2016, Joseph Kapcia, M.D., noted that Bennick had a history of rheumatoid arthritis that was well-controlled.  (Tr. 235). In August 2017, it was noted that Bennick had chronic rheumatoid arthritis and a history of joint operations.  Bennick continued on Humira and was stable without significant joint pain or erythema.  (Tr. 661).

Bennick argues that the ALJ did not sufficiently account for her history of upper extremity surgeries,  and that the only accommodation made for that in the RFC was she would be limited to occupations that require no more than occasional pushing and pulling with the upper extremities.   The ALJ considered Bennick's post-surgery wrist examination findings.  (Tr. 17-18).  In June 2017, Bennick's elbow and wrist ranges of motion showed no crepitation or instability.  (Tr. 17, 611). Her strength was assessed at five out of five with sensations intact.  (*Id*.). Moreover, Bennick's own testimony established that most of her daily activities were not significantly impaired by her surgeries in that she remained capable of mowing her lawn on a  riding mower, caring for her garden, and using a snowblower in the winter while wearing a right wrist brace.  (Tr. 61, 62, 64).  Therefore, we find this assignment of error lacks

merit.

### c. *The ALJ's credibility determination was supported by substantial evidence*.

The last contested issue here relates to whether the ALJ erroneously found Bennick's testimony about her impairments and side effects of her medications to be not entirely credible. As a general matter, a Court should "ordinarily defer to an ALJ's credibility determination." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). As the factfinder, the ALJ evaluates the credibility of witnesses. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). While "any statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d. Cir. 2011). To assess a claimant's credibility, the ALJ must consider several factors, including the claimant's daily activities, the intensity of the symptoms, the treatment received, and other facts concerning functional limitations and restrictions." 20 C.F.R. § 404.1529(c)(3). The ALJ should reject claims of subjective complaints if he or she does not find them credible. *See Schaudek v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

In evaluating a claimant's subjective complaints, the ALJ engages

in a two-step process in which the ALJ determines whether the claimant has an impairment that could reasonably cause the alleged symptoms, and then evaluates the intensity and persistence of the claimant's symptoms, such as pain, and determines the extent to which the claimant's symptoms limit his or her ability to perform work-related activities. *See* Soc. Sec. Ruling 163-p, 2017 WL 5180304 (eff. Mar. 28, 2016).

In this situation, the ALJ concluded at step three that Bennick's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible" because her alleged degree of incapacity is not supported by the record evidence. (Tr. 13).

The records show that Bennick had Chiari posterior fossa decompressive surgery in October 2012, and she was only reporting residual headaches as a symptom after surgery. (Tr. 564, 655).

The ALJ considered the medical record in its entirety, including the medical records from Geisinger Medical Center, which noted she has a history of Arnold-Chiari malformation, but no focal neurologic deficits. (Tr. 568). Records note that her gait was normal, and her strength was five out of five. (Tr. 569). In March 2017, it was noted that Bennick had

a history of headaches. (Tr. 536).  The review of the various findings in the record is direct evidence that the ALJ considered the entire case record in determining the extent to which her symptoms limit her ability to perform work, in accordance with Social Security Ruling 16-3p.

Because the Court is constrained by a highly deferential standard with regard to determinations in plaintiff's credibility, and the ALJ demonstrated that at step three he considered the entire record by pointing to evidence that supports his finding that Bennick's statements on her symptoms are not entirely credible, we conclude that there was no error in the ALJ's determination in Bennick's credibility.

Accordingly, for the reasons stated above, we find that the ALJ's decision is supported by substantial evidence. Thus, the decision of the Commissioner of Social Security shall be affirmed.

An appropriate order follows.

***<u>s/Joseph F. Saporito, Jr.</u>***
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated:  March 31, 2021